

**IN THE DISTRICT COURT OF AND FOR OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 11 2019

RICK WARREN
COURT CLERK
48_____

| | |
|---|---|
| A.E.M. GROUP, LLC, an Oklahoma limited liability company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| JAXON BRODY HOLDINGS, LLC, an ) | |
| Oklahoma limited liability company; ) | |
| OKLAHOMA INVESTIGATIVE GROUP, ) | |
| INC., d/b/a TriCorps Security, an ) | |
| Oklahoma Corporation, TRICORPS ) | |
| CYBER SECURITY LLC, d/b/a TriCorps ) | |
| Technology and TriCorps Technologies, an ) | |
| Oklahoma limited liability company; ) | |
| TRICORPS GOVERNMENT, LLC, an ) | |
| Oklahoma limited liability company, and ) | |
| TRICORPS SURVEILLANCE, LLC, an ) | |
| Oklahoma limited liability company, and ) | |
| John Does, 1-5, true names unknown, ) | |
| ) | |
| Defendants. ) | |

**CJ - 2019 - 5050**

### PETITION

COME NOW the Plaintiff, A.E.M. GROUP, LLC, and for their cause of action against

the Defendants, allege and state: Plaintiff sets forth its theories of recovery on its Cause of

Action against the Defendants herein without any express or implied waiver of their rights under

the following authorities: (a) *Darrow v. Integris Health, Inc.*, 2008 OK 1, ¶7 176 P.3d 1204, in

which the Court observed "A Plaintiff is required neither to identify a specific theory of recovery

nor to set out the correct remedy or relief to which he may be entitled."; (b) *Indiana Nat'l Bank

v. State Dep't of Human Servs.,* 1994 OK 98, ¶ 4, 880 P.2d 371, 375-76, which states that

Oklahoma Courts "reject the approach that pleading is a game of skill in which one misstep by

counsel may be decisive to the outcome and accept the principle that the purpose of pleading is

Exhibit 1

to facilitate a proper decision on the merits."; (c) *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), which states: "If the court can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so despite the Plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements;" (d) Oklahoma law which permits the Plaintiff to contingently plead inconsistent facts and theories on their Cause of Action against the Defendants under the transactional approach to causes of action. *See e.g* 12 O.S. §2008 (E)(2) and Committee Comment; *Howell v. James*, 1991 OK 47 , 818 P.2d 444 , 448 (alternative and hypothetical pleading allows flexibility in pleading and furthers the goal of allowing a full presentation of all relevant facts and legal theories at trial); *Barringer v. Baptist Healthcare of Oklahoma*, 2001 OK 29, ¶17, 22 P.3d 695; *Jones v. Oklahoma Merit Protection Comm'n*, 1993 OK CIV APP 96, ¶9, 860 P.2d 804 ("The substance of the pleading will control over the strict form of the pleading."); *Fuchs v. Fleetwood Homes of Texas*, 2006 OK CIV APP 148, ¶12, 149 P.3d 1099 (12 O.S. § 2008 requires the Court to "construe pleadings to do substantial justice."); *Niemeyer v. U.S. Fidelity and Guar. Co.*, 1990 OK 32, ¶ 6, 789 P.2d 1318 (Pleading rules place the spirit of the law above strict compliance with the letter of the law); *Rodgers v. Higgins*, 1993 OK 45, ¶4, 871 P.2d 398, 402-403("Oklahoma jurisprudence utilizes the transactional approach for its definition of a 'cause of action.' Although different theories of liability may be pressed in support of each claim, only a single cause of action can ordinarily be predicated upon one occurrence or transaction."); *Allen v. Lynn Hickey Dodge, Inc.*, 2001 OK 93, ¶11, n. 21, 39 P.3d 781 ("Only a single cause of action can be predicated on the same set of facts. Different theories of liability may be pressed in support of each claim alleged." (citations omitted)). **THEREFORE, PLAINTIFF'S STATEMENT OF ANY THEORIES OF RECOVERY OR**

2

Exhibit 1

INDIVIDUAL ELEMENTS THEREOF UNDER THEIR CAUSE OF ACTION, *INFRA*, ARE MERELY FOR ORGANIZATIONAL CONVENIENCE AND ARE IN NO WAY INTENDED TO LIMIT PLAINTIFF'S ABILITY, AFTER DISCOVERY AND AT THE TIME OF TRIAL OR OTHER DISPOSITION, TO FULLY RECOVER ON ITS CAUSE OF ACTION SET FORTH HEREIN UNDER ANY COGNIZABLE THEORY OF RELIEF.

## CAUSE OF ACTION

## PARTIES, JURISDICTION AND VENUE

1.      The Plaintiff, A.E.M. GROUP, LLC, an Oklahoma limited liability Company ("Plaintiff" or "A.E.M. GROUP, LLC"), is the record owner of a certain commercial property located at 9802 N. Morgan Road, Yukon, Oklahoma 73099, which is more particularly described in **EXHIBIT 1**, attached hereto as a part hereof (the "Property") and whose Property has been materially injured by the actions and omissions of the Defendants.

2.      Defendant JAXON BRODY HOLDINGS, LLC, is an Oklahoma limited liability company, whose registered agent is Stefani D. Wilson, having a notice address of 12312 Hidden Forrest Ave., Oklahoma City, OK 73142.

3.      TriCorp Security holds itself out at https://tricorps.com/what-we-do/#different as follows:

> Not only are we a comprehensive security and technology firm, able to be a true one-stop shop for our clients, we're also able to maintain close personal relationships with our clients and employees usually not found in larger firms. In an industry notorious for mergers and acquisitions, which means instability for employees and clients, TriCorps has broken the mold. For decades, TriCorps has remained privately held and operated by the same ownership and management. Our experienced leadership, proven track record and innovative strategy is more

3

Exhibit 1

beneficial than any merger or acquisition and has allowed us to remain consistent.

When you compare the experience, education and careers of our leadership team, you will find them to be best in the industry. As a team we are dedicated to providing our clients with highly trained personnel, state of the art technology and world-class customer service.

4.      TriCorps Security is a registered trade name of OKLAHOMA INVESTIGATIVE GROUP, INC., an Oklahoma Corporation, whose registered agent is Dan Glover, having a notice address of 12312 Hidden Forrest Ave., Oklahoma City, OK 73142.

5.      According to http://tricorps.com, 12312 Hidden Forrest Ave., Oklahoma City, OK 73142 is the home office of TriCorps Security and is the same address as Defendant Defendant JAXON BRODY HOLDINGS, LLC.

6.      On information and belief, TriCorps Security has a number of other subsidiaries which share personnel, offices, service agents, and which are part of the "one-stop shop" business TriCorps advertises at https://tricorps.com/what-we-do/#different, including without limitation:

        a.      TRICORPS CYBER SECURITY LLC, d/b/a TriCorps Technology and TriCorps Technologies, an Oklahoma limited liability company, whose registered service agent is TriCorps Cyber Security, having a notice address of 12312 Hidden Forrest Ave., Oklahoma City, OK 73142;

        b.      TRICORPS GOVERNMENT, LLC, an Oklahoma limited liability company, whose registered service agent is, Stefani Dannielle Wilson, having a notice address of 12312 Hidden Forrest Ave., Oklahoma City, OK 73142; and

4

Exhibit 1

c.     TRICORPS SURVEILLANCE, LLC, an Oklahoma limited liability
company, whose registered service agent is, Stefani D. Wilson, having
a notice address of 12312 Hidden Forrest Ave., Oklahoma City, OK
73142.

7.     On information and belief, under the factors set forth in *Frazier v. Bryan
Memorial Hosp. Authority*[1] and other law, the foregoing business units of TriCorps security are
maintained, operated, and held out to the public in such a way that the distinction between them
should be ignored for purposes of legal liability herein.

8.     Without limitation to other circumstances, on information and belief, TriCorps
Security's business units OKLAHOMA INVESTIGATIVE GROUP, INC., TRICORPS CYBER
SECURITY LLC, d/b/a TriCorps Technology and TriCorps Technologies, TRICORPS
GOVERNMENT, LLC and TRICORPS SURVEILLANCE, LLC and JAXON BRODY
HOLDINGS, LLC are intertwined by the following:

a.     A parent entity owns all or most of each subsidiary's stock/membership
interests;

b.     The parent and subsidiary entities have common directors and officers;

c.     The parent entity provides financing to the subsidiary entities;

d.     The parent corporation subscribes to the subsidiary entities'
stock/membership interests;

e.     The subsidiary entities are each grossly undercapitalized;

f.     A parent entity pays the salaries, expenses or losses of the subsidiaries;

g.     Almost all of the subsidiary entities' business is with the parent entity;

---

[1] 1989 OK 73, 775 P.2d 281.

5

Exhibit 1

h.      The parent entity refers to its subsidiaries as divisions or a departments;

i.      The subsidiary entites' officers and directors follow directions from the parent entity;

j.      The legal formalities for keeping the parent entity and the subsidiary entities separate and independent are not fully observed;

k.      The parent entity and the subsidiary entities have a commonality of purpose.

9.      On information and belief, Defendants OKLAHOMA INVESTIGATIVE GROUP, INC., TRICORPS CYBER SECURITY LLC, d/b/a TriCorps Technology and TriCorps Technologies, TRICORPS GOVERNMENT, LLC and TRICORPS SURVEILLANCE, LLC and JAXON BRODY HOLDINGS, LLC are organized, managed, funded, capitalized, and structured in such a way as to constitute a single, interrelated business for purposes of liability herein.

10.     The District Court of OKLAHOMA County has jurisdiction of the issues and parties, and venue is properly laid in OKLAHOMA County.

11.     John Does 1-5, are persons, true names unknown, who: (a) authorized, approved, facilitated, ratified, participated in and assisted in the acts A.E.M. GROUP, LLC complain of herein, together with the insurer(s) and bonding company(ies), if any, for any of the Defendants.

12.     Without limitation to (a) A.E.M. GROUP, LLC undiscovered damages, (b) damages accruing after the filing of Plaintiff Petition, including without limitation A.E.M. GROUP, LLC costs, expenses and attorney fees herein, and (c) A.E.M. GROUP, LLC claims to prospective injunctive relief, A.E.M. GROUP, LLC avers, in compliance with 12 O.S. § 2008 (OSCN 2019), that the presently known amounts sought herein are believed to be in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) together with interest thereon, accrued

6

Exhibit 1

and accruing, and the attorney fees, costs and expenses of this action, and therefore are presently

known to be in excess of the amount required for diversity jurisdiction pursuant to Section 1332

of Title 28 of the United States Code.

13.    To the best of the knowledge and belief of A.E.M. GROUP, LLC, none of the

Defendants are entitled to the benefits of the Service Members' Civil Relief Act of 2003, 50

U.S.C. App. §§ 501 *et seq.* (formerly known as Section 200 of the Soldiers and Sailors Civil

Relief Act of 1940).

## FACTS COMMON TO ALL THEORIES

14.    Plaintiff incorporates by reference its allegations set forth in Paragraphs 1-11

shown directly above, the same as if set forth in full.

**The Sale Contract**

15.    On or about February 25, 2019, Defendant JAXON BRODY HOLDINGS, LLC

entered into a certain Oklahoma Uniform Contract of Sale of Real Estate COMMERCIAL

IMPROVED (the "Sale Contract") as the buyer of the Property from A.E.M. GROUP, LLC.

16.    A copy of the Sale Contract provided to A.E.M. GROUP, LLC, is attached hereto

as **EXHIBIT 2.**

17.    A.E.M. GROUP, LLC has a reasonable expectation that the Sale Contract binds

Defendant JAXON BRODY HOLDINGS, LLC.

18.    On information and belief, Defendant JAXON BRODY HOLDINGS, LLC's

purchase of the property was for the benefit of the common business enterprise of TriCorps

Security, including without limitation OKLAHOMA INVESTIGATIVE GROUP, INC.,

TRICORPS CYBER SECURITY LLC, d/b/a TriCorps Technology and TriCorps Technologies,

TRICORPS GOVERNMENT, LLC and TRICORPS SURVEILLANCE, LLC and JAXON

7

Exhibit 1

BRODY HOLDINGS, LLC.

19.     In the Sale Contract, Defendant JAXON BRODY HOLDINGS, LLC agreed to pay to the order of A.E.M. GROUP, LLC, the sum of Two Million Three Hundred Fifty Thousand and No/100 Dollars ($2,350,000.00) to purchase the Property.

20.     Defendant JAXON BRODY HOLDINGS, LLC paid the sum of Ten Thousand and No/100 Dollars ($10,000.00) as earnest money, deposited into the trust account of Chicago Title of Edmond.

21.     A.E.M. GROUP, LLC, as Seller of the Property under the Sale Contract fully performed under the terms of the Sale Contract.

22.     Defendant JAXON BRODY HOLDINGS, LLC, as Buyer of the Property under the Sale Contract failed and refused to close on the transaction as required under the Sale Contract and is in breach of the Sale Contract.

23.     The Sale Contract includes standard terms customary to sales of improved commercial properties with no contingencies.

24.     Section 5 of the Sale Contract provided Buyer a right to inspect the Property for 30 days which expired on April 1, 2019 ("Inspection Period").

25.     The Sale Contract contains a right for the Buyer to terminate the Contract within twenty-four hours of the expiration of the Inspection Period set forth in Section 5 of the Sale Contract, and provides for a refund of the earnest money.

26.     The right to terminate the Sale Contract expired on April 2, 2019.

27.     The Defendants did not terminate the Sale Contract at any time prior to April 2, 2019.

28.     On May 23, 2019, Defendant JAXON BRODY HOLDINGS, LLC, through its

8

Exhibit 1

legal counsel, sent a letter to Seller and Chicago Title of Edmond purporting to cancel and terminate the Sale Contract under Section 5, Subsection F of the Sale Contract.

29.     The attempt to cancel and terminate the Sale Contract was untimely and of no effect.

30.     Plaintiff demanded specific performance of the Sale Contract.

31.     Defendant JAXON BRODY HOLDINGS, LLC rejected the demand for specific performance of the Sale Contract.

32.     Or or about August 20, 2019, Plaintiff and Defendant JAXON BRODY HOLDINGS, LLC attempted mediation of the dispute as required under the Sale Contract.

**Defendant JAXON BRODY HOLDINGS, LLC's Delays and the Defendants' Partial Demolition of the Property**

33.     According to the Sale Contract's terms, the closing of the sale of the Property was to occur on April 5, 2019.

34.     On or about March 21, 2019,  Defendant JAXON BRODY HOLDINGS, LLC requested extension of closing date, to be set on or before April 26, 2019, as set forth in **EXHIBIT 3,** attached hereto as a part hereof.

35.     In anticipation of the April 26, 2019, closing date, Plaintiff moved to temporary offices, while its permanent offices were under construction.

36.     Defendant JAXON BRODY HOLDINGS, LLC failed to close the Property sale transaction on April 26, 2019.

37.     On or about May 1, 2019,  Defendant JAXON BRODY HOLDINGS, LLC requested another extension of closing date, to be set for May 10, 2019, as set forth in **EXHIBIT 4,** attached hereto as a part hereof.

Exhibit 1

38.     On or about May 6, 2019, Defendant JAXON BRODY HOLDINGS, LLC told the realtor handling the sale transaction that Defendant JAXON BRODY HOLDINGS, LLC was delaying the closing to May 15, 2019.

39.     On or about May 15, 2019, the realtor notified Plaintiff via e-mail that Defendant JAXON BRODY HOLDINGS, LLC was delaying the closing.

40.     On or about May 15, 2019, Chad Segress, on behalf of the Plaintiff, visited the Property and discovered that Defendant JAXON BRODY HOLDINGS, LLC had persons on-site, causing unauthorized partial demolition to the existing improvements to the Property.

41.     On or about May 15, 2019, Plaintiff discovered that the Defendants had removed existing Property cabling, and were in the process of re-cabling, and had caused extensive damage to the Property.

42.     Exemplar photographs of the damaged condition of the Property are attached hereto as **EXHIBIT 5,** as a part hereof.

43.     Plaintiff had not given the Defendants any authorization to make any alterations to the Property or to conduct any work on the premises.

44.     The Sale Contract did not grant the Defendants any rights prior to closing to occupy the Property, other than for non-destructive inspection purposes, nor any rights to partially demolish, modify, make alterations, "re-cable" or otherwise conduct any work on the premises.

45.     After the discovery of the Defendants unauthorized partial demolition and modifications to the Property, Dick Segress, acting on behalf of the Plaintiff, visited the Property.

46.     Dick Segress discovered approximately eight (8) to ten (10) people working inside the building on the Property without any authorization from the Plaintiff, including,

10

Exhibit 1

without limitation TriCorps Security employees and outside contractors.

47.     On information and belief, the unauthorized work and partial demolition of the Property was to further benefit of the common business enterprise of TriCorps Security, including without limitation OKLAHOMA INVESTIGATIVE GROUP, INC., TRICORPS CYBER SECURITY LLC, d/b/a TriCorps Technology and TriCorps Technologies, TRICORPS GOVERNMENT, LLC and TRICORPS SURVEILLANCE, LLC and JAXON BRODY HOLDINGS, LLC.

48.     Dick Segress informed the persons present that A.E.M. GROUP, LLC, due to the potential for liability that could be asserted against the Seller of the Property, without a lease agreement in place they could not be working on the premises prior to closing of the transaction and instructed them to leave.

49.     On or about May 17, 2019, Defendant JAXON BRODY HOLDINGS, LLC, requested an extension of the closing through the realtor, and Plaintiff signed an extension to move the closing of the sale transaction to May 31, 2019, as set forth in **EXHIBITS 6 and 7,** attached hereto as a part hereof.

50.     On information and belief the extensions to the Sale Contract were obtained by fraud and deception by the Defendants insofar as each of them withheld the true reasons for each of the extensions, failed to advise the Plaintiff of all relevant and material facts, failed to disclose they would use the requested extensions as an excuse to breach the Sale Contract, and damaged the Plaintiff thereby.

51.     After Defendant JAXON BRODY HOLDINGS, LLC's attempt to terminate the Sale Contract on or about May 23, 2019, on or about May 29, 2019, a broker sent a letter to Defendant JAXON BRODY HOLDINGS, LLC with photos of damage to Property, as set forth

11

Exhibit 1

in **EXHIBIT 8**, attached hereto as a part hereof.

**Plaintiff's Damages**

52.    Defendants have failed and refused to further perform under the Sale Contract.

53.    Defendants have failed to restore the property to the condition it was in prior to the unauthorized partial demolition by the Defendants and have instead demanded return of the earnest money.

54.    Without limitation to other occurrences, Plaintiff obtained a repair estimate for the damage caused to the Property by the Defendants, which estimate is in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

55.    Without limitation to other occurrences, Plaintiff has damages from their relocation from the Property and expenses incurred due to the acts and omissions of the Defendants which are in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

56.    In the alternative, Plaintiff is entitled to specific performance under the Sale Contract in a sum in excess of Two Million Three Hundred Fifty Thousand and No/100 Dollars ($2,350,000.00).

57.    Plaintiff has been forced to hire attorneys to prosecute this action and are entitled to recovery of their costs, expenses and a reasonable attorney fee under theories of wilful or negligent injury to property, 12 O.S. § 940, principles of contract law, and equitable principles.

58.    Under the doctrine of respondeat superior and equitable principles, Defendant JAXON BRODY HOLDINGS, LLC is responsible for the acts and omissions of its officers, managers, members, employees, agents, independent contractors, and assigns, including without limitation Defendants John Does 1-5.

59.    The foregoing wrongful actions were intentional, insofar as the each desired for

12

Exhibit 1

the direct and foreseeable results of their conduct and were or should have been substantially certain of the results of their respective acts and omissions.

60.     The Defendants used improper, unfair and inequitable means in attempting to accomplish their collective goals.

61.     Plaintiff has been materially damaged as a result of the wrongful actions of the Defendants.

62.     The agreements and the acts of the Defendants were willful.

63.     The agreements and the acts of the Defendants were wanton.

64.     The agreements and the acts of the Defendants were malicious

**FIRST THEORY OF RECOVERY**
**(Negligence/Negligent or Willful Injury to Property)**

For A.E.M. GROUP, LLC first THEORY OF RECOVERY, A.E.M. GROUP, LLC states:

65.     Paragraphs 1-64 above are incorporated herein.

66.     Without limitation to other duties, under Oklahoma law, "'Negligence' is the failure to exercise ordinary care to avoid injury to another's person or property. 'Ordinary care' is the care which a reasonably careful person would use under the same or similar circumstances." Oklahoma Jury Instructions- Civil, Instruction 9.2.

67.     Without limitation to other duties, actionable negligence requires: 1) a duty on the part of the defendant to protect the Plaintiff from injury; 2) the failure of the defendant to perform that duty; and 3) injury to the Plaintiff resulting from such failure. *Thomlinson v. Love's Country Stores, Inc.*, 1993 OK 83, ¶ 7, 854 P.2d 910; *McClure v. Sunshine Furniture*, 2012 OK CIV APP 67, ¶19, 283 P.3d 323.

13

Exhibit 1

68.     Duty of care is not a concept that arises only by statute, and whenever a person is placed in such a position with regard to another that it is obvious that if he did not use due care in its own conduct he will cause injury to the other, the duty at once arises to exercise care commensurate with the situation in order to avoid such injury. *Wofford v. Eastern State Hosp.*, 1990 OK 77, ¶10, 795 P.2d 516; McClure at ¶22.

69.     "As a general rule a 'defendant owes a duty of care to all persons who are foreseeably endangered by its conduct with respect to all risks which make the conduct unreasonably dangerous.'" *Wofford* at ¶11;McClure at ¶22(citations omitted).

70.     The duty to exercise ordinary care to prevent injury evolves upon anyone without regard to the legal relationship between the parties, whenever the circumstances are such that an ordinarily prudent person could reasonably apprehend that by the natural and probable consequences of its act, another person, rightfully there, will be in danger of receiving an injury. McClure at ¶26.

71.     Vicarious liability is imposed by law when one person is made answerable for the actionable conduct of another. *Braden v. Hendricks,* 1985 OK 14, ¶ 18, n.24, 695 P.2d 1343, 1351, n.24.

72.     As set forth in *Bosh v. Cherokee County Governmental Building Authority*, 2013 OK 9, ¶9, 305 P.3d 994:

> Under the common law doctrine of *respondeat superior* a principal or employer is generally held liable for the wilful acts of an agent or employee acting within the scope of the employment in furtherance of assigned duties. The doctrine rests on the premise that the employer answers for an employee's conduct provided the employee was acting within the scope of employment. An employer is liable for an employee's torts if the conduct was committed within the scope of employment. [Footnotes omitted]

14

Exhibit 1

73.     With respect to agency liability, the intent and effect of the contractual language in conjunction with the parties' actual conduct determines status. *See e.g. Hinson v. Cameron*, 1987 OK 49, n.32, 742 P.2d 549 (a principal/agent relationship is determined by the parties' status which is found from surrounding facts and is not dictated by the contract; in the event of a discrepancy, facts control over contrary contractual language).

74.     A right of control vested in the principal is central in determining the existence of an agency relationship. *Smith v. St. Francis Hosp., Inc.*, 983 OK CIV APP 58, ¶9, 676 P.2d 279, 281 ("a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on its behalf and subject to its control, and consent by the other so to act.").

75.     The essence of an agency relationship is the right of the principal to give directions that the agent is under a duty to obey as long as he remains the agent.

76.     The agent should act in the principal's interest and at its control. *Id.*

77.     With respect to "independent contractors," any such claim does not insulate the Defendants from liability:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by its servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by its servants. [citation omitted]

*Id.* at ¶12.

78.     Under the Oklahoma law of law of negligence *per se*, in *Howard v. Zimmer*, Inc., 2013 OK 17, ¶13, 299 P.3d 463, the Court stated:

15

Exhibit 1

The negligence per se doctrine is employed to substitute statutory standards for parallel common law, reasonable care duties. When courts adopt statutory standards for causes of action for negligence, the statute's violation constitutes negligence per se. To establish negligence per se, the Plaintiff must demonstrate the claimed injury was caused by the violation, and was of the type intended to be prevented by the statute. Finally, the injured party must be one of the class intended to be protected by the statute. Liability per se enables Plaintiff to establish as a matter of law that the defendant's conduct constituted a breach of duty in a negligence action, so that only causation and damages need be proven

79.     Without limitation to its other duties, the Defendants, and its respective agents and assigns each had duties toward A.E.M. GROUP, LLC to:

    a.      Exercise ordinary care to avoid injury to A.E.M. GROUP, LLC;

    b.      Exercise due care in the Defendants' own conduct to prevent injury to A.E.M. GROUP, LLC;

    c.      Exercise due care in avoiding negligent and willful injury to Plaintiff's Property;

    d.      Be truthful and honest in their dealings with A.E.M. GROUP, LLC and with respect to the improvements on the Property;

    e.      Disclose all relevant facts to A.E.M. GROUP, LLC;

    f.      Not withhold material facts from A.E.M. GROUP, LLC;

    g.      Act consistently and in good faith with the representations the Defendants made regarding the Property;

    h.      Refrain from acting inconsistently with the representations the Defendants made regarding the Property;

    i.      To act in a commercially reasonable and equitable manner.

16

Exhibit 1

80.     To the extent any of the Defendants employed any persons involved in the foregoing events, each such Defendant and its agents and assigns each had a duty to hire, train, and retain properly qualified, honest, law-abiding personnel and to not hire, train or retain personnel otherwise.

81.     Without limitation to other occurrences, the Defendants further breached its duties toward A.E.M. GROUP, LLC as follows:

a.     The Defendants failed to exercise ordinary care to avoid injury to A.E.M. GROUP, LLC

b.     The Defendants failed to exercise due care in the Defendants' own conduct to prevent injury to A.E.M. GROUP, LLC;

c.     The Defendants failed to exercise due care in avoiding negligent and willful injury to Plaintiff's Property;

d.     The Defendants failed to be completely truthful and honest in their dealings with A.E.M. GROUP, LLC and with respect to the Property;

e.     The Defendants failed to completely disclose all relevant facts to A.E.M. GROUP, LLC;

f.     The Defendants withheld material facts from A.E.M. GROUP, LLC;

g.     The Defendants failed to act consistently and in good faith with the representations the Defendants made regarding the quality and proper compliance of the improvements on the Property;

h.     The Defendants failed to properly and adequately oversee and

17

Exhibit 1

failed to perform in a good, reasonable, and workmanlike manner the following tasks necessary to the improvements on the Property, including without limitation: planning, design, approval, permitting, setting and enforcing specifications, materials selection, workmanship, construction, supervision and oversight of construction, testing, construction review, acceptance, exposure and correction of any defects on the unauthorized work performed on the Property;

    i.    To act in a commercially reasonable and equitable manner.

82.    The Defendants' acts, omissions, and agreements, as set forth herein were negligent.

83.    The Defendants' acts, omissions, and agreements have damaged the Plaintiff and are the proximate cause of Plaintiff's damages.

84.    The acts and omissions of the Defendants herein resulted in negligent injury to Plaintiff's Property.

85.    In the alternative, the acts and omissions of the Defendants herein resulted in intentional injury to Plaintiff's Property.

86.    The acts, omissions, and agreements of the Defendants set forth herein above have interfered with the business of the Plaintiff, which has damaged the Plaintiff.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff request judgment against the Defendants in sums to be determined by the finders of fact, together with punitive and exemplary damages, costs and attorney fees, and such other and further relief as is equitable and just.

## SECOND THEORY OF RECOVERY

18

Exhibit 1

**(Injunctive Relief)**

87.     Plaintiff incorporate by reference Paragraphs 1-86 above.

88.     Without limitation to other evidence, based on the foregoing facts and referenced documents, A.E.M. GROUP, LLC seek the following injunctive relief:

a.     Enjoin the Defendants from taking any action which is in any way contrary to the Plaintiffs' rights under the Sale Contract;

b.     Pursuant to 12 O.S. § 1571 *et seq.* and/or other law, an Order temporarily restraining the Defendants from taking any action which would harm or adversely affect in any way A.E.M. GROUP, LLC legal and equitable interests in the Property Property, and preserving the *status quo,* until such time as the Court determines A.E.M. GROUP, LLC Cause of Action herein;

c.     After notice and an opportunity to be heard, entry of  a preliminary and a permanent injunction against each of the Defendants from taking any action which would harm or adversely affect in any way A.E.M. GROUP, LLC legal and equitable interests set forth herein, including without limitation:

i.     Attempting in any way to bill, demand, collect from, charge, and/or surcharge A.E.M. GROUP, LLC and/or A.E.M. GROUP, LLC real property for any cost or expense related in any way to the Property and the events and occurrences set forth in this Petition;

19

Exhibit 1

ii.     Attempting in any way to create, attach, perfect and/or enforce in any way any lien, claim or encumbrance against A.E.M. GROUP, LLC and/or A.E.M. GROUP, LLC real property for any cost or expense related in any way to the Property and the events and occurrences set forth in this Petition;

iii.    Attempting in any way to require or force A.E.M. GROUP, LLC to pay any portion of any remediation for the Property or any part thereof;

iv.     Restraining and enjoining the respective agents, employees, independent contractors, successors in interest, and assigns of each of the Defendants from undertaking any of the foregoing acts, set forth in this paragraph.

WHEREFORE, PREMISES CONSIDERED, A.E.M. GROUP, LLC respectfully request judgment against the Defendants, as set forth herein above, together with all costs and expenses of this action, a reasonable attorneys fee, and such other and further relief as is equitable and just.

### THIRD THEORY OF RECOVERY
(Breach of Contract/Specific Performance)

89.     Paragraphs 1-88 above are incorporated herein.

90.     As set forth herein above, the Defendants have breached the Sale Contract with A.E.M. GROUP, LLC as previously set forth herein.

91.     A.E.M. GROUP, LLC has made demand on the Defendants, such Defendants have failed and refused to perform under the Sale Contract and have further failed to properly correct the damage to the Property caused by the Defendants.

Exhibit 1

92.     The Property is damaged and presently not fit for its intended use, due to the damage caused by the Defendants, creating continuing and worsening damage to A.E.M. GROUP, LLC real property and placing A.E.M. GROUP, LLC at material risk of further damages.

93.     A.E.M. GROUP, LLC has been damaged by the Defendant's breach of contract, as previously set forth herein, together with interest thereon, accrued and accruing, and the attorney fees, costs and expenses of this action.

94.     In the alternative, A.E.M. GROUP, LLC requests the Court award liquidated damages as set forth in the Sale Contract in a sum in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

95.     In the alternative, A.E.M. GROUP, LLC requests the Court order specific performance under the Sale Contract, including without limitation closing of the sale of the Property at the greater of restored market value or the Sale Contract price of Two Million Three Hundred Fifty Thousand and No/100 Dollars ($2,350,000.00).

WHEREFORE, A.E.M. GROUP, LLC request judgment against the Defendants, in a sum to be determined by the trier of fact with all other actual damages discovered through discovery, punitive and exemplary damages, reasonable attorney fees, costs and expenses and interest thereon, and such other and further relief as is equitable and just.

### FOURTH THEORY OF RECOVERY
(Declaratory Judgment)

96.     Paragraphs 1-95 above are incorporated herein.

97.     Without limitation to other evidence, based on the foregoing facts and referenced documents, the Plaintiff seek declaratory judgments that:

21

Exhibit 1

a.     TriCorps Security's business units OKLAHOMA INVESTIGATIVE GROUP, INC., TRICORPS CYBER SECURITY LLC, d/b/a TriCorps Technology and TriCorps Technologies, TRICORPS GOVERNMENT, LLC and TRICORPS SURVEILLANCE, LLC and JAXON BRODY HOLDINGS, LLC are intertwined by the following:

i.     A parent entity owns all or most of each subsidiary's stock/membership interests;

ii.     The parent and subsidiary entities have common directors and officers;

iii.     The parent entity provides financing to the subsidiary entities;

iv.     The parent corporation subscribes to the subsidiary entities' stock/membership interests;

v.     The subsidiary entities are each grossly undercapitalized;

vi.     A parent entity pays the salaries, expenses or losses of the subsidiaries;

vii.     Almost all of the subsidiary entities' business is with the parent entity;

viii.     The parent entity refers to its subsidiaries as divisions or a departments;

ix.     The subsidiary entities' officers and directors follow directions from the parent entity;

x.     The legal formalities for keeping the parent entity and the subsidiary entities separate and independent are not fully observed;

xi.     The parent entity and the subsidiary entities have a commonality of purpose.

b.     Defendants OKLAHOMA INVESTIGATIVE GROUP, INC., TRICORPS CYBER SECURITY LLC, d/b/a TriCorps Technology and

Exhibit 1

TriCorps Technologies, TRICORPS GOVERNMENT, LLC and TRICORPS SURVEILLANCE, LLC and JAXON BRODY HOLDINGS, LLC are organized, managed, funded, capitalized, and structured in such a way as to constitute a single, interrelated business for purposes of liability herein;

c.    The Sale Contract is valid and enforceable against the Defendants;

d.    The attempt to cancel the Sale Contract was ineffective as a matter of law;

e.    The Property substantially conforms to the specifications of the Contract;

f.    Plaintiff has fully performed and tendered full performance under the Sale Contract;

g.    The Defendants were not privileged nor authorized in any way to begin demolition and modification of the Property at any time prior to the closing of the Sale Contract.

WHEREFORE, the Plaintiff respectfully requests that the Court enter declaratory judgment in favor of Plaintiffs and against the Defendants and such other relief to which the Plaintiff may be entitled at law or in equity.

## **COMBINED REQUEST FOR RELIEF**

WHEREFORE, the Plaintiff request that this Court enter judgment in favor of Plaintiff and against all Defendants as previously forth herein, together with exemplary and punitive damages and such other principal sums as to be determined by the trier of fact, reasonable attorney fees, cost and expenses and costs of collection, prejudgment interest accrued and accruing, through entry of judgment on the foregoing at the maximum lawful rate of prejudgment

Exhibit 1

interest, compounding annually as provided by law, post-judgment interest on the foregoing sums at the maximum lawful rate of post-judgment interest from the date of the journal entry of judgment herein, until paid, compounding annually as provided by law, and such further relief as this Court deems just and equitable.

Respectfully submitted,

C. Craig Cole,  OBA No. 1775
John E. Gatliff II, OBA No. 18060
Ginger K. Casper, OBA No. 20089
Mary L. Ferguson, OBA No. 31990
**C. CRAIG COLE & ASSOCIATES**
317 Northwest Twelfth Street
Oklahoma City, Oklahoma 73103
Telephone:     (405) 232-8700 jg
Facsimile:     (405) 232-1655
thefirm@ccc-a.com
**ATTORNEYS   FOR   PLAINTIFF   A.E.M. GROUP, LLC**

**JURY TRIAL DEMANDED**
**ATTORNEYS LIEN CLAIMED**

24

Exhibit 1

**EXHIBIT 1**

LEGAL DESCRIPTION:

T13N R05W S25 SW4 A#10 PT SW4 - BEG 1329.27'N & 33'E OF SW/C, TH N650' E635.09' S650' W633.68' TPB.

EXHIBIT 1  Page 1 of 1
Exhibit 1

Authentisign ID: BDEF8971-2BA5-40C8-A897-613AFD975AEC
Property Address ___9802_N Morgan Road_____Yukon_____OK___73099_

# OKLAHOMA REAL ESTATE COMMISSION

*This is a legally binding Contract; if not understood, seek advice from an attorney.*

## OKLAHOMA UNIFORM CONTRACT OF SALE OF REAL ESTATE
## COMMERCIAL IMPROVED

**CONTRACT DOCUMENTS. The Contract is defined as this document with the following attachment(s): (check as applicable)**

_**X**_ Financing Supplement                           _____ Supplement

_____ Exhibit _____                          _____

**Parties. THE CONTRACT is entered into between:**

_____AKM Group LLC_____"Seller", and

_Jaxon Brody Holdings, LLC. and/or Assigns_____"Buyer".

The Parties' signatures at the end of the Contract, which includes any attachments or documents incorporated by reference, with delivery to their respective Brokers, if applicable, will create a valid and binding Contract, which sets forth their complete understanding of the terms of the Contract. This agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors and permitted assigns. The Contract shall be executed by original signatures of the Parties or by signatures as reflected on separate identical Contract counterparts (carbon, photo, fax or other electronic copy). The Parties agree that as to all aspects of this transaction involving documents an electronic signature shall have the same force and effect as an original signature pursuant to the provisions of the Uniform Electronic Transactions Act, 12A, Oklahoma Statutes, Section 15-101 et seq. All prior verbal or written negotiations, representations and agreements are superseded by the Contract, which may only be modified or assigned by a further written agreement of Buyer and Seller.

The Parties agree that all notices and documents provided for in this contract shall be delivered to the Parties or their respective brokers, if applicable. Seller agrees to sell and convey by General Warranty Deed, and Buyer agrees to accept such deed and buy the Property described herein, on the following terms and conditions:

The Property shall consist of the following described real estate located in _____Canadian_____County, Oklahoma.

1. **LEGAL DESCRIPTION.**
   T13N R05W S25 SW4 A#10 PT SW4 BEG 1,329.27'N & 33'E OF SW/C, TH N650'
   E635.09' S650' W633.68' TPB.

   __9802___N Morgan Road_____Yukon_____73099_____
   **Property Address**                                    **City**                **Zip**

   **Together with** all fixtures and improvements, and all appurtenances, subject to existing zoning ordinances, plat or deed restrictions, utility easements serving the Property, ~~including all mineral rights owned by Seller unless expressly reserved by Seller~~ in the Contract and ~~excluding mineral rights previously reserved or conveyed of record (collectively referred to as "the Property").~~
   $2,350,000 JW        $2,500,000

2. **PURCHASE PRICE, EARNEST MONEY AND SOURCE OF FUNDS.** This is a CASH TRANSACTION unless a Financing Supplement is attached. The Purchase Price is $ ~~2,250,000.00~~ payable by Buyer as follows: Buyer has paid $___10,000.00___ as earnest money on execution of the Contract, and Buyer shall pay the balance of the purchase price and Buyer's closing costs at Closing. Upon execution of the Contract, the earnest money shall be deposited in the trust account of_____Chicago Title of Edmond_____ or if left blank, the Listing Broker's trust account, as part payment of the purchase price and/or closing costs.

3. **CLOSING, FUNDING AND POSSESSION.** The Closing process includes execution of documents, delivery of deed and receipt of funds by Seller and shall be completed on or before_____04/05/2019_____, ("Closing Date") or not later than _____ days (five [5] days if left blank) thereafter caused by a delay of the Closing process, or such later date as may be necessary in the Title Evidence Paragraph. Possession shall be transferred upon conclusion of Closing process unless otherwise provided below:

   _____
   _____
   _____

   In addition to costs and expenses otherwise required to be paid in accordance with terms of the Contract, Buyer shall pay Buyer's Closing fee, Buyer's recording fees, and all other expenses required from Buyer. Seller shall pay documentary stamps required, Seller's Closing fee, Seller's recording fees, if any, and all other expenses required from Seller. Funds required from Buyer and Seller at Closing shall be either cash, cashier's check or wire transfer.

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL IMPROVED (11-2016)                          InstanetFORMS Page 1 of 7

EXHIBIT 2  Page 1 of 10
Exhibit 1

Authentisign ID: ADF53E71-8BA4-40C4-8027-C13A7B2E045C
Property Address   9702 "A" Morgan Road                                           Yukon         OK    73099

**4. TIME PERIODS SPECIFIED IN CONTRACT.** Time periods for Investigations, Inspections and Reviews   and Financing Supplement Agreement shall commence on _____ **(Time Reference Date)**, regardless of the date the Contract is signed by Buyer and Seller. The day after the **Time Reference Date** shall be counted as day one (1). If left blank, the **Time Reference Date** shall be the third day after the last date of signatures of the Parties.

**5. INVESTIGATIONS, INSPECTIONS and REVIEWS.**

**A.** The Buyer agrees and acknowledges that Seller, Seller's Broker and their licensed associates, are not experts regarding the condition of the Property. No representations, warranties, or guarantees regarding the condition of the Property, or environmental hazards, are expressed or implied except as may be specified by Seller in the additional provisions in Paragraph 11.

**B.** Buyer shall have ____30____ days (ten [10] days if left blank) after the **Time Reference Date** to complete any investigations, inspections, and reviews. Seller shall have water, gas and electricity turned on and serving the Property for the Buyer's inspections, and through the date of possession or Closing, whichever occurs first. If required by ordinance, Seller, or Seller's Broker, if applicable, shall deliver to Buyer, in care of Buyer's Broker, if applicable, within five (5) days after the **Time Reference Date** any written notices affecting the Property.

**C.** Buyer, at Buyer's expense, shall have the right to enter upon the Property, together with Buyer's representative(s), independent contractor(s) and/or any other person Buyer deems qualified, to conduct any and all investigations, inspections, tests, studies and reviews.  Excepting only the negligence of Seller or a condition caused or permitted by Seller, Buyer shall indemnify, protect, defend and hold Seller harmless from and against any and all claims, demands, losses, liabilities, costs, fees and expenses (including attorney's and consultant's fees) arising out of or related to Buyer's entry onto the Property in connection with any testing or investigation performed pursuant to this Contract.  Buyer's investigations, inspections and reviews may include, but may not be limited to, the following:

1) **Flood, Storm Water Run-off, Storm Sewer Back-up or Water History**
2) **Environmental Risks.** Including, but not limited to soil, air, water, hydrocarbon, chemical, carbon, asbestos, mold, radon gas and lead-based paint
3) **Roof.** Structural members, roof decking, coverings and related components
4) **Structural Inspection**
5) **Use of Property.** Property use restrictions, building restrictions, easements, restrictive covenants, zoning ordinances and regulations
6) **Square Footage/Acreage.** Buyer shall not rely on any quoted square footage and/or acreage and shall have the right to measure the Property.

**D. EQUIPMENT.** Within ____30____days (ten [10] if left blank) from the **Time Reference Date** of this Contract, Buyer, at Buyer's expense, shall have the right to inspect all fixtures and equipment relating to plumbing, heating and cooling, electrical systems and any other equipment or systems and shall report any item not in normal working order, in writing, to Seller, in care of Seller's Broker, if applicable, including a copy of the estimated cost to repair such items. If the total estimated cost to Seller of such repairs and replacement required by this paragraph exceeds $_____, Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate unless Buyer agrees, in writing, to pay repair and replacement costs in excess of such amount.

**E. WOOD DESTROYING INSECTS INSPECTION.** Within ____30____ days (ten(10) if left blank) from the **Time Reference Date** of this Contract, Buyer shall have the right to have the Property inspected by Buyer's choice of a licensed exterminating company and deliver to Seller, in care of Seller's Broker, if applicable, an infestation report. The expense of such report shall be the Buyer's expense. In the event the report shows visible infestation or visible damage, Seller agrees, at Seller's expense, to treat and/or repair same, provided the estimated cost to cure such infestation or damage does not exceed $_____. If the estimated cost exceeds such amount, Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate unless Buyer agrees, in writing, to pay any costs in excess of such amount.

**F. BUYER'S RIGHT TO CANCEL.** If, upon Buyer's investigation, inspections and reviews, the Buyer determines that the Property is not suitable for Buyer's intended use, the Buyer may cancel and terminate this Contract and receive a refund of the earnest money by delivering written notice to the Seller, in care of Seller's Broker, if applicable, as provided in Paragraph 17 within twenty-four (24) hours of the expiration of the time period specified in this provision.

**6. RISK OF LOSS.** Until transfer of Title or transfer of possession, risk of loss to the Property, ordinary wear and tear excepted, shall be upon Seller; after transfer of Title or transfer of possession, risk of loss shall be upon Buyer. (Parties are advised to address insurance coverage regarding transfer of possession prior to Closing.)

**7. NON-FOREIGN SELLER.**  Seller represents that at the time of acceptance of this contract and at the time of Closing, Seller is not a "foreign person" as such term is defined in the Foreign Investments in Real Property Tax Act of 1980 (26 USC Section 1445(f) et. Sec) ("FIRPTA"). If either the sales price of the property exceeds $300,000.00 or the buyer does not intend to use the property as a primary residence then, at the Closing, and as a condition thereto, Seller shall furnish to Buyer an affidavit, in a form and substance acceptable to Buyer, signed under penalty of perjury containing Seller's United States Social Security and/or taxpayer identification numbers and a declaration to the effect that Seller is not a foreign person within the meaning of Section "FIRPTA."

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL IMPROVED (11-2016)                                                           InstanetFORMS Page 2 of 7

EXHIBIT 2  Page 26 of 101

Authentication ID: ... | Property Address   9802 N Morgan Road                                          Yukon          OK    73099

**8. ACCEPTANCE OF PROPERTY. Buyer**, upon accepting Title or transfer of possession of the Property, shall be deemed to have accepted the Property in its then condition. No warranties, expressed or implied, by Sellers, or Seller's Broker and/or their associated licensees, with reference to the condition of the Property, shall be deemed to survive the Closing.

**9. TITLE EVIDENCE. Seller** shall furnish Buyer title evidence covering the Property. Such title evidence shall be in the form of: **(check one or both)**

☒ **SURFACE RIGHTS ABSTRACT (A below)**
☒ **TITLE INSURANCE COMMITMENT AND SURVEY (B below)**

**A. SURFACE RIGHTS ABSTRACT**

1) Seller, at Seller's expense, within thirty (30) days prior to Closing Date, agrees to make available to Buyer the following (collectively referred to as "the Title Evidence"):
   a) A complete surface-rights-only Abstract of Title, last certified to a date subsequent to the **Time Reference Date**, by an Oklahoma licensed and bonded abstract company; and
   b) A current Uniform Commercial Code Search Certificate

2) LAND OR BOUNDARY SURVEY. Seller agrees that Buyer, at (check one) ☒ **Buyer's** ☐ **Seller's** expense, may have a licensed surveyor enter upon the Property to perform a Land or Boundary (Pin Stake) Survey that shall then be considered as part of the Title Evidence.

3) BUYER TO EXAMINE TITLE EVIDENCE.
   a) Buyer shall have ten (10) days after receipt to examine the Title Evidence and to deliver Buyer's objections to Title to Seller or Seller's Broker, if applicable. In the event the Title Evidence is not made available to Buyer within ten (10) days prior to Closing Date, said Closing Date shall be extended to allow Buyer the ten (10) days from receipt to examine the Title Evidence.
   b) Buyer agrees to accept Title subject to: (i) utility easements serving the Property, (ii) building and use restrictions of record, (iii) set back and building lines, (iv) zoning regulations, and (v) reserved and severed mineral rights, which shall not be considered objections for requirements of Title.

4) SELLER TO CORRECT ISSUES WITH TITLE (IF APPLICABLE); POSSIBLE CLOSING DELAY. Upon receipt by Seller, or in care of Seller's Broker, if applicable, of any Title requirements reflected in an Attorney's Title Opinion or Title Insurance Commitment, based upon the standard of marketable title set out in the Title Examination Standards of the Oklahoma Bar Association, the Parties agree to the following:
   a) Seller, at Seller's expense, shall make reasonable efforts to obtain and/or execute all documents necessary to cure Title requirements identified by Buyer; and
   b) Delay Closing Date for _____ days [thirty (30) days if left blank], or a longer period as may be agreed upon in writing, to allow Seller to cure Buyer's Title requirements. In the event Seller cures Buyer's objection prior to the delayed Closing Date, Buyer and Seller agree to close within five (5) days of notice of such cure. In the event that Title requirements are not cured within the time specified in this Paragraph, the Buyer may cancel the Contract and receive a refund of the earnest money.

**B. TITLE INSURANCE COMMITMENT AND SURVEY**

1) Seller, at ☒ **Buyer's** ☐ **Seller's** expense (check one), (including the cost of pre-closing abstracting and Title examiner's report) within ___20___ days after execution of contract shall furnish Buyer a Commitment for title insurance from a title insurance company acceptable to Buyer (the "Title Commitment"). The Title Commitment covering the Property shall be addressed to the Buyer and bind the title company to issue to Buyer, at closing, an American Land Title Association (ALTA) standard form Owner's Policy of Title Insurance (the "Title Policy"), in the amount of the purchase price. The Title Commitment shall set forth the status of the Title to the Property, showing and having attached copies of all liens, claims, encumbrances, easements, rights-of-way, encroachments, reservations, restrictions and any other matters affecting the Property.

2) Seller, at ☒ **Buyer's** ☐ **Seller's** expense (check one), within __15__ days after execution of contract , shall furnish Buyer five (5) copies of a survey of the Property, prepared by a licensed surveyor, dated or updated no more than six (6) months prior to the **Time Reference Date** (the "Survey"). The Survey shall show:
   a) The boundary lines, dimensions and area of the land indicated thereon,
   b) The location of all fences, buildings, driveways, monuments, and other improvements located within the boundary lines,
   c) The location of all setback lines
   d) The location of all easements, alleys, streets, roads, rights-of-way, and other matters of record affecting such land, together with the instrument, book and page number indicated,
   e) If the Property is un-platted, a metes and bounds description of the Property,

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC COMMERCIAL IMPROVED (11-2016)                                                    InstanetFORMS Page 3 of 7

EXHIBIT 2  Page 30 of 101

Property Address   9702 N Morgan Road                                    Yukon          OK    73099

    f) The scale, the North direction, the beginning point, distance to the nearest intersecting street, and point of reference from which the Property is measured, and

    g) If the Property is located in (i) a floodway, (ii) a 100-year flood plain, (iii) a "flood prone area," as defined by the United States Department of Housing and Urban Development (HUD), pursuant to the U.S. Flood Disaster Protection Act of 1973, as amended, or (iv) an area classified by the Federal Emergency Management Agency (FEMA) as having special flood hazards, reflected by Flood Insurance Rate Map covering the area in which the Property is situated; and shall identify the portion of the Property located in such floodway, 100-year flood plain, flood prone area, or flood hazard area. Such Survey shall be in a form sufficient to permit the Title Company issuing the Title Policy to remove printed survey exception from the policy.

3) The legal description of the Property contained in the Survey, if different from the description contained in this Contract, once approved by Buyer and Seller, shall be substituted for the description of the Property and the Contract shall be deemed amended by the substitution of the legal description of the Property contained in the Survey without the necessity of the Parties executing any further amendment to the Contract.

4) Buyer shall have ten (10) days from the receipt of both the Commitment for Title Insurance and the Survey referred to above to examine the same and specify to Seller, in care of Seller's Broker, if applicable, in writing, those matters which Buyer finds objectionable. No matter in the Title Commitment shall be construed as a valid objection to title under this Contract unless it is so construed under the Title Examination Standards of the Oklahoma Bar Association, where applicable. In case of valid objections to the title in the Title Commitment, Seller shall have thirty (30) days, or such additional time as may be agreed to, in writing, by Seller and Buyer, to make reasonable efforts to cure or remove such objections. If Buyer, or Buyer's Broker, if applicable, does not deliver to Seller, in care of Seller's Broker, if applicable, a written notice specifying those items to which Buyer objects within ten (10) days after the receipt by Buyer of the information referred to above, then all of the items reflected in the Title Commitment and Survey shall be considered to be acceptable to Buyer. If such valid objections cannot be satisfied within the time stipulated in this Paragraph, the earnest money shall be refunded to the Buyer, Buyer shall return the abstract to Seller, and this Contract shall be of no further force and effect.

5) On the date of closing of this transaction, as provided in the Contract, Seller shall furnish to Buyer a copy of the Title Commitment, fully marked and initialed by the title company issuing the Owner's Title Policy, which marked Title Commitment, shall reflect the exceptions and provisions to be contained in the Owner's Title policy upon issuance thereof. The Title Commitment shall commit to issue to Buyer an owner's policy of title insurance, covering all of the Property, in the sum of the purchase price, and written on an American Land Title Association (ALTA) Owner's Policy form or its equivalent, and, except for the objections Buyer has agreed to waive showing only the standard printed exceptions and exclusions contained in the said ALTA form of Owner's Title Policy. The premium charged by the Title Company and post closing abstracting expense of providing such Title Policy shall be borne by:

**(check one)** [X] **Buyer**    [ ] **Seller**

6) The Title Commitment shall permit deletion of the Survey exceptions, at Buyer's sole cost and expense. Additional extended coverage, including waiver of the standard exceptions and an ALTA standard zoning endorsement, which reflects the zoning classification of the Property, shall also be provided by Seller, at Buyer's request, and costs for such extended coverage in excess of the base policy premium shall be reimbursed to Seller by Buyer at closing.

7) Seller shall make reasonable efforts, at Seller's sole cost and expense, to cure or remove objections identified in the Survey. If Seller fails to cause all of the objections to be removed or cured prior to the closing date, or if Seller, or Seller's Broker, if applicable, notifies Buyer, in care of Buyer's Broker, if applicable, of Seller's decision not to cure or remove some, or all, of the objections, Buyer's sole remedy shall be to:

    a) Terminate this Contract by giving Seller, in care of Seller's Broker, if applicable, written notice thereof, which notice must be given within five  (5) days after Seller, or Seller's Broker, if applicable, notifies Buyer, in care of Buyer's Broker, if applicable, of Seller's decision not to cure or remove the objections; in which event, the earnest money, together with all interest earned thereon, shall be returned to the Buyer, and neither Party shall have any further rights, duties, or obligations hereunder; or

    b) Elect to purchase the Property subject to the Buyer's objections not so removed or cured; in which event, the objections not removed or cured shall be deemed acceptable to Buyer.

8) Notwithstanding anything to the contrary contained in this Contract, in the event the transaction contemplated by this Contract does not close for any reason except Seller's failure to cure or remove a title objection described in the Survey or wrongful refusal to close, **Buyer shall be responsible for the payment of the cost of the Survey.** Upon closing, any existing Abstract(s) of Title, owned by Seller, shall become the property of Buyer.

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC COMMERCIAL IMPROVED (11-2016)                                                                    Instanet FORMS Page 4 of 7

EXHIBIT 2  Page 4 of 11

Authentisign ID: [illegible]

Property Address   9802 W Morgan Road                                    Yukon          OK   73099

**10. TAXES, ASSESSMENTS AND PRORATIONS.**

    **A.** General ad valorem taxes for the current calendar year shall be prorated through the date of closing, if certified. However, if the amount of such taxes has not been fixed, the proration shall be based upon the rate of levy for the previous calendar year and the most current assessed value available at the time of Closing.

    **B.** The following items shall be paid by Seller at Closing: (i) Documentary Stamps; (ii) all utility bills, actual or estimated; (iii) all taxes other than general ad valorem taxes which are or may become a lien against the Property; and (iv) any labor, materials, or other expenses related to the Property, incurred prior to Closing which is or may become a lien against the Property.

    **C.** At Closing all leases, if any, shall be assigned to Buyer and security deposits, if any, shall be transferred to Buyer. Prepaid rent and lease payments shall be prorated through the date of Closing.

    **D.** If applicable, membership and meters in utility districts to include, but not limited to, water, sewer, ambulance, fire, garbage, shall be transferred at no cost to Buyer at Closing.

    **E.** If the property is subject to a mandatory Homeowner's Association, dues and assessments, if any, based on most recent assessment, shall be prorated through the date of Closing.

    **F.** All governmental and municipal special assessments against the property (matured or not matured), not to include Homeowner's Association special assessments, whether or not payable in installments, shall be paid in full by Seller at Closing.

**11. ADDITIONAL PROVISIONS.** *OFFERED PRICE IS INCLUDING ALL RADIO TOWERS & EQUIPMENT ASSOCIATED @ PRESENT. ALSO INCLUDES ANY & ALL $ REVENUE FROM TOWERS & EQUIPMENT*

**12. TAX DEFERRED EXCHANGE 1031.** In conformance with Section 1031 of the Internal Revenue Code, it may be the intention of the Seller or Buyer or both to effect a tax-deferred exchange. Either the Seller or Buyer or both may assign his/her rights in the contract to a Qualified Intermediary for the purpose of effecting a tax-deferred exchange. The Parties agree to cooperate and execute the necessary documents to allow either or both Parties to effect such exchange at no additional cost or liability to the other Party. However, any warranties that may be expressed in this contract shall remain and be enforceable between the Parties executing this document.

**13. MEDIATION.** Any dispute arising with respect to the Contract shall first be submitted to a dispute resolution mediation system servicing the area in which the Property is located. Any settlement agreement shall be binding. In the event an agreement is not reached, the Parties may pursue legal remedies as provided by the Contract.

**14. BREACH AND FAILURE TO CLOSE.**

    **A. UPON BREACH BY SELLER.** If the Buyer performs all of the obligations of Buyer, and if, within five (5) days after the date specified for Closing under Paragraph 3, Seller fails to convey the Title or fails to perform any other obligations of the Seller under this Contract, then Buyer shall be entitled to either cancel and terminate this Contract, return the abstract to Seller and receive a refund of the earnest money, or pursue any other remedy available at law or in equity, including specific performance.

    **B. UPON BREACH BY BUYER.** If, after the Seller has performed Seller's obligation under this Contract, and if, within five (5) days after the date specified for Closing under Provision 3, the Buyer fails to provide funding, or to perform any other obligations of the Buyer under this Contract, then the Seller may, at Seller's option, cancel and terminate this Contract and retain all sums paid by the Buyer, but not to exceed 5% of the purchase price as liquidated damages, or pursue any other remedy available at law or in equity, including specific performance.

**15. INCURRED EXPENSES AND RELEASE OF EARNEST MONEY.**

    **A. INCURRED EXPENSES.** Buyer and Seller agree that any expenses, incurred on their behalf, shall be paid by the Party incurring such expenses and shall not be paid from earnest money.

    **B. RELEASE OF EARNEST MONEY.** In the event a dispute arises prior to the release of earnest money held in escrow, the escrow holder shall retain said earnest money until one of the following occur:

        1) A written release is executed by Buyer and Seller agreeing to its disbursement;

        2) Agreement of disbursement is reached through Mediation;

        3) Interpleader or legal action is filed, at which time the earnest money shall be deposited with the Court Clerk; or

        4) The passage of thirty (30) days from the date of final termination of the Contract has occurred and options 1), 2) or 3) above has not been exercised; Broker escrow holder, at Broker's discretion, may disburse earnest money. Such disbursement may be made only after fifteen (15) days written notice to Buyer and Seller at their last known address stating the escrow holder's proposed disbursement.

**16. DELIVERY OF ACCEPTANCE OF OFFER OR COUNTEROFFER.** The Buyer and Seller authorize their respective Brokers, if applicable, to receive delivery of an accepted offer or counteroffer.

**17. NOTICE.** Any notice provided for herein shall be given in writing, sent by (a) personal delivery, (b) United States mail, postage prepaid, or (c) by facsimile, to the Escrow Agent, with copies to the other Parties, addressed as follows:

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC COMMERCIAL IMPROVED (11-2016)                                                                InstanetFORMS Page 5 of 7

EXHIBIT 2  Page 30 of 101

Authentication ID: FDE8DEFA-28A8-40CA-8DD7-012AF98234EC

Property Address _____ 7802 _ N Morgan Road _____ Yukon _____ OK _____ 73099

**To Escrow/Closing Agent:**

Chicago Title of Edmond

c/o _____ Alicia Cosby _____

3520 S Blvd #100, Edmond, OK 73013

| Phone: | 405-348-7731 | FAX: | |
|---|---|---|---|

**Buyers:** Jaxon Brody Holdings, LLC. and/or Assigns

**Sellers:** AEM Group LLC

c/o _____ Martha Brennan _____   c/o _____ Martha Brennan _____

| Phone: | 715-307-2566 | Phone: | 715-307-2566 |
|---|---|---|---|
| FAX: | | FAX: | |
| Email: | martha@mbresults.com | Email: | martha@mbresults.com |

or such other address as shall hereafter be designated in writing.

**18. BROKER RELATIONSHIP DISCLOSURE/COMMISSION.** Parties acknowledge and confirm that Broker(s) providing brokerage services to the Parties have described and disclosed their duties and responsibilities to the Parties prior to the Parties signing this Contract.

[X] (Applicable for in-house transactions only) Parties acknowledge and confirm that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract. Parties further acknowledge receipt of Estimate of Costs associated with this transaction and that a Contract Information Booklet has been made available to the Parties in print, or at www.orec.ok.gov.

Seller acknowledges and confirms that the Broker providing brokerage services to the seller has described and disclosed their duties and responsibilities to the seller prior to the seller signing this Contract.

It is further acknowledged and agreed by the Parties that the [ ] **Buyer** [X] **Seller** *(check one)* will pay the Listing Broker a commission equal to _____ of the purchase price at Closing for services rendered in this real estate transaction.

**19. TERMINATION OF OFFER.** The above Offer shall automatically terminate on _____ March 1, 2019 _____ unless withdrawn prior to acceptance or termination.

**20. EXECUTION BY Parties.**

**AGREED TO BY BUYER:**

On this Date: _____ 02/25/2019 _____

Jaxon Brody Holdings, LLC.

Buyer's Printed Name

Jaxon Brody Holdings, LLC.

Buyer's Signature

_____

Buyer's Printed Name

_____

Buyer's Signature

**AGREED TO BY SELLER:**

On this Date: _____ 2/26/2019 _____

AEM Group LLC

Seller's Printed Name

Seller's Signature

Dick R. SEGRESS

Seller's Printed Name

_____

Seller's Signature

**OFFER REJECTED AND SELLER IS NOT MAKING A COUNTEROFFER** _____, 20____

_____   _____

Seller's Signature                               Seller's Signature

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL IMPROVED (11-2016)                                  InstanetFORMS Page 6 of 7

EXHIBIT 2  Page 6 of 10
Exhibit 1

Authentisign ID: 8DEBB97A-2AA6-40C8-8807-0136F092045C

Property Address   3802 N Morgan Road                                    Yukon          OK    73099

# EARNEST MONEY RECEIPT AND INSTRUCTIONS

Receipt of $____ 10,000.00 ____ [X] Check [ ] Cash as earnest money Deposit, to be deposited in accordance with the terms and conditions of PURCHASE PRICE, EARNEST MONEY AND SOURCE OF FUNDS Provision. Broker(s) acknowledges receipt of earnest money and Listing Broker, if applicable, shall deposit said funds in accordance with Paragraph 2 of this Contract. If deposited in an escrow account other than the Listing Broker, the Listing Broker, if applicable, shall provide a copy of receipt to the Selling Broker.

Date: ___02/25/2019___                                    Date: ___02/25/2019___

Authentison                                               Authentison

*Martha Brennan*                                          *Martha Brennan*

Selling Broker/Associate Signature 4:41:01 PM CST         Listing Broker/Associate Signature PM CST

**Martha Brennan**                                        **Martha Brennan**

Selling Broker/Associate (PRINT NAME)                     Listing Broker/Associate (PRINT NAME)

     **Metro First Realty of Edmond**                          **Metro First Realty of Edmond**

Company Name                                              Company Name

**3636 E I-35 Frontage Rd      Edmond      OK   73013**   **3636 E I-35 Frontage Rd      Edmond      OK   73013**

Address                                                   Address

          **715-307-2566**                                        **715-307-2566**

Phone                                                     Phone

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC COMMERCIAL IMPROVED (11-2016)                                      InstanetFORMS Page 7 of 7

EXHIBIT 2  Page 7 of 10

Authentisign ID: 9DEB9878-28AA-40C8-9D07-012AFD92D4FC

## OKLAHOMA REAL ESTATE COMMISSION

## DISCLOSURE TO SELLER OR BUYER OF BROKERAGE DUTIES, RESPONSIBILITIES AND SERVICES

This notice may be part of or attached to any of the following:

☐ Buyer Brokerage Agreement     ☐ Listing Brokerage Agreement     ☐ Option Agreement
☒ Sales Agreement                 ☐ Exchange Agreement          ☐ Other _____

**1. Duties and Responsibilities.** A Broker who provides Brokerage Services to one or both parties shall describe and disclose in writing the Broker's duties and responsibilities prior to the party or parties signing a contract to sell, purchase, option, or exchange real estate.

A Broker shall have the following duties and responsibilities which are mandatory and may not be abrogated or waived by a Broker, whether working with one party, or working with both parties:

     A.    treat all parties to the transaction with honesty and exercise reasonable skill and care;
     B.    unless specifically waived in writing by a party to the transaction:
          1)    receive all written offer and counteroffers;
          2)    reduce offers or counteroffers to a written form upon request of any party to a transaction; and
          3)    present timely all written offers and counteroffers.
     C.    inform, in writing, the party for whom the Broker is providing Brokerage Services when an offer is made that the party will be expected to pay certain closing costs, Brokerage Service costs and the approximate amount of the costs;
     D.    keep the party for whom the Broker is providing Brokerage Services informed regarding the transaction;
     E.    timely account for all money and property received by the Broker;
     F.    keep confidential information received from a party or prospective party confidential. The confidential information shall not be disclosed by a Broker without the consent of the party disclosing the information unless consent to the disclosure is granted in writing by the party or prospective party disclosing the information, the disclosure is required by law, or the information is made public or becomes public as the result of actions from a source other than the Broker. The following information shall be considered confidential and shall be the only information considered confidential in a transaction:
          1)    that a party or prospective party is willing to pay more or accept less than what is being offered,
          2)    that a party or prospective party is willing to agree to financing terms that are different from those offered,
          3)    the motivating factors of the party or prospective party purchasing, selling, optioning or exchanging the property, and
          4)    information specifically designated as confidential by a party unless such information is public.
     G.    disclose information pertaining to the Property as required by Residential Property Condition Disclosure Act;
     H.    comply with all requirements of the Oklahoma Real Estate Code and all applicable statutes and rules;
     I.    when working with one party or both parties to a transaction, the duties and responsibilities set forth in this section shall remain in place for both parties.

**2. Brokerage Services provided to both parties to the transaction.** The Oklahoma broker relationships law (Title 59, Oklahoma Statutes, Section 858-351 – 858-363) allows a real estate Firm to provide brokerage services to both parties to the transaction. This could occur when a Firm has contracted with a Seller to sell their property and a prospective Buyer contacts that same Firm to view the property. If the prospective Buyer wants to make an offer on the property, the Firm must now provide a written notice to both the Buyer and Seller that the Firm is now providing brokerage services to both parties to the transaction. The law states that there are mandatory duties and responsibilities that must be performed by the broker for each party.

**3. Broker providing fewer services.** If a Broker intends to provide fewer Brokerage Services than those required to complete a transaction, the Broker shall provide written disclosure to the party for whom the Broker is providing services. The disclosure shall include a description of those steps in the transaction that the Broker will not provide and state that the Broker assisting the other party in the transaction is not required to provide assistance with these steps in any manner.

**4. Confirmation of disclosure of duties and responsibilities.** The duties and responsibilities disclosed by the Broker shall be confirmed in writing by each party in a separate provision, incorporated in or attached to the contract to purchase, option or exchange real estate.

I understand and acknowledge that I have received this notice on _____ day of _____02/25/2019_____, 20 19 .

(Print Name) __Jaxon Brody Holdings, LLC__     (Signature) *Jaxon Brody Holdings, LLC*
                                                   *Authentisign* 2/25/2019 4:53:34 PM CST

(Print Name) _____     (Signature) _____

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission
OREC DISCLOSURE TO SELLER OR BUYER OF DUTIES AND RESPONSIBILITIES (11-2013)

InstanetFORMS

EXHIBIT 2   Page 8 of 10

Authentisign ID: 0DEF907A-2A14-49C9-8D67-0414EE03B469

## OKLAHOMA REAL ESTATE COMMISSION
*This is a legally binding Contract; if not understood, seek advice from an attorney.*

## ACKNOWLEDGMENT AND CONFIRMATION OF DISCLOSURES

**It is hereby confirmed that prior to entering into Contract, the following items (as applicable) have been disclosed and/or delivered:**

**Buyer acknowledges and confirms that the Broker providing brokerage services to the Buyer has described and disclosed their duties and responsibilities to the Buyer prior to the Buyer signing this Contract.**

☒ (Applicable for in-house transactions only) Buyer acknowledges and confirms that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract.

**Buyer acknowledges receipt of Residential Property Condition Disclosure or Disclaimer Form** (as applicable to residential real property improved with not less than one nor more than two dwelling units) pursuant to Title 60 O.S., Section 831-839:

☐ Buyer has received a Residential Property Condition Disclosure Statement Form (completed and signed by the Seller) and dated within 180 days of receipt.

☐ Buyer has received a Residential Property Condition Disclaimer Statement Form (completed and signed by the Seller) and dated within 180 days of receipt.

☒ This transaction is exempt from disclosure requirements pursuant to Title 60, O.S., Section 838.

☐ Disclosure not required under the Residential Property Condition Disclosure Act.

**Buyer acknowledges receipt of Lead-Based Paint/Hazards Disclosures with Appropriate Acknowledgment (if property constructed before 1978)**

☐ Buyer has signed the "Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards" form, which has been signed and dated by Seller and applicable Licensee(s), and has also received a copy of the Lead-Based Paint Pamphlet titled "Protect Your Family From Lead in Your Home."

☐ Property was constructed in 1978 or thereafter and is exempt from this disclosure.

☒ The subject of this transaction is not a residential dwelling and does not require a disclosure on Lead-Based Paint/Hazards.

**Buyer acknowledges and confirms the above and further, Buyer acknowledges receipt of Estimate of Costs associated with this transaction and acknowledges that a Contract Information Booklet has been made available to the Buyer in print, or at www.orec.ok.gov.**

Buyer/Tenant Name (Printed): **Jaxon Brody Holdings, LLC**      Buyer/Tenant Name (Printed): _____

Buyer/Tenant Signature: _____      Buyer/Tenant Signature: _____
*Jaxon Brody Holdings, LLC*
*02/26/19 1:59 AM CST*

Dated: _____      Dated: _____

**Seller acknowledges and confirms that the Broker providing brokerage services to the Seller has described and disclosed their duties and responsibilities to the Seller prior to the Seller signing this Contract.**

☒ (Applicable for in-house transactions only) Seller acknowledges and confirms that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract.

**Seller further acknowledges receipt of Estimate of Costs associated with this transaction and that a Contract Information Booklet has been made available to the Seller in print, or at www.orec.ok.gov.**

Seller/Landlord Name (Printed): **AEM Group LLC**      Seller/Landlord Name (Printed): _____

Seller/Landlord Signature: _____      Seller/Landlord Signature: _____

Dated: **2/26/2019**      Dated: _____

---

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC CONFIRMATION OF DISCLOSURES (11-2014)

Page 1 of 1

InstanetFORMS

EXHIBIT 2  Page 5 of 10      Exhibit 1

Authentisign ID: 9DEB9678-38AA-40C8-9D67-012AFD92D4FC

Your actual rate, payment and costs could be higher. Get an official Loan estimate before choosing a loan.



First American Title

| | | | |
|---|---|---|---|
| Prepared For | Jaxon Brody Holdings LLC | Address | 8902 Morgan Rd Yukon OK 73099 |

Print Date: 02/25/2019

| | | | | |
|---|---|---|---|---|
| Loan Type | 90.00 % Conventional | | | Est. Closing Date: 04/05/2019 |
| Sales Price | 2,250,000.00 | | | |
| 1st Loan Amount | 2,025,000.00 | Term Yrs | Int. Rate | |
| 2nd Loan Amount | 0.00 | 30 | 4.83 | |
| Down Payment | 225,000.00 A | | | |

**Closing Costs**

| | | | | | |
|---|---|---|---|---|---|
| Escrow or Settlement | 200.00 | | | | |
| Owner Title Policy | 4905.00 | | | | |
| Lenders Title Policy | 50.00 | | | | |
| New Loan Service Fee | 0.00 | | **Prepaids & Impounds** | | |
| Discount 0.00% | 0.00 | 8 | Months Taxes | 1.25 % | 10,441.00 |
| Origination Fee | 1,200.00 | 15 | Months Insurance | 12.00 % | 33750.00 |
| Processing Fee | 0.00 | 30 | Days Interest | | 7813.13 |
| Tax Service Contract | 85.00 | 2 Months PMI | | | 0.00 |
| Document Preparation | 0.00 | Other | | | 0.00 |
| Underwriting | 0.00 | Total Prepaid Items | | | 52,004.13 C |
| Appraisal | 475.00 | **Payment Breakdown** | | | |
| Credit Report | 60.00 | Principal and Interest | | | 10411.33 |
| City Transfer Tax | 0.00 | Real Estate Taxes | | | 1,740.17 |
| Recording Fees Mtg | 75.00 | Home Owner Insurance | | | 2,250.00 |
| Survey | 2,500.00 | Monthly M.I.P | | | 0.00 |
| Home Inspection | 0.00 | | | | |
| Title Examination | 175.00 | HOA | | | 0.00 |
| Transaction Fee | 0.00 | Other | | | 0.00 |
| Final Title Report | 125.00 | Total Payment (PITI) | | | 14,401.50 |
| Mortgage Tax | 2,025.00 | Estimated Tax Prorations | | | -5568.00 |
| Termite Inspection | 0.00 | A+B+C=Total Cash Investment | | | 283,561.13 |
| Seller's Paid CC (Enter as -) | 0.00 | | | | |
| Mortg Inspect Cert | 250.00 | | | | |
| Total Closing Costs | 12,125.00 B | | | | |

These are estimated fees. Actual fees may vary.
Prepared By: Jeff Weldes  BRE # DRE #1245  Coporate DRE #1245
I have received a copy of this estimate:

Authentisign
*Jaxon Brody Holdings, LLC*
2/25/2019 4:33:03 PM CST

02/25/2019

Buyer                    Buyer                    Date

Title Fees provided by First American Title Company

EXHIBIT 2  Page 10 of 10

Exhibit 1

EXHIBIT B



METRO FIRST
REALTY
of Edmond

## EXTENSION OF CONTRACT

We, the undersigned, agree to extend the closing date of the Real Estate

Purchase Contract dated 03/01/2019 _____ on property located at

9802 N Morgan Rd, Yukon, OK 73099 _____ to on/or before 04/26/2019 _____ .

| *David Ross* | dotloop verified 03/21/19 10:20 AM CDT | 04/26/2019 |
| --- | --- | --- |
| Buyer | | Date |

| | | |
| --- | --- | --- |
| Buyer | | Date |

| *Dick Sigress* | dotloop verified 03/21/19 6:58 AM CDT QWXS-AHD0-3ABQ-DSDO | 4/26/2019 |
| --- | --- | --- |
| Seller | | Date |

| | | |
| --- | --- | --- |
| Seller | | Date |

EXHIBIT 3  Page 1 of 1
Exhibit 1

Authentisign ID: 13450076-508B-4F83-89C7-C7E152269887

EXHIBIT C

This form officially approved by the OKLAHOMA CITY METROPOLITAN ASSOCIATION OF REALTORS(R)

Copyright 2013 Oklahoma City Metropolitan Association of REALTORS ®, Inc
REALTORS® "R" is a registered trademark of the National Association of REALTORS® and its licensees.
Permission to use this form is granted to REALTORS® only.

**EXTENSION OF CONTRACT**

_04/26/19_
Date

WE HEREBY AGREE TO CHANGE THE CLOSING DATE AND POSSESSION ON THE

CONTRACT TO PURCHASE DATED _____ 02/26/19 _____,

THE PROPERTY LOCATED AT __9802__ __N Morgan Road__

_____ Yukon _____ OK __73099__,

AS FOLLOWS:

CLOSING DATE ON OR BEFORE _____ 05/10/19 _____

POSSESSION DATE: _____ At closing and funding _____

ALL OTHER CONDITIONS ON THE CONTRACT SHALL REMAIN THE SAME.

*Oklahoma Investigative Group, LLC* 04/29/2019
Buyer **Jaxon Brody Holdings, LLC.** Date
4/29/2019 5:22:00 PM CDT

05/01/2019
Seller **AKM Group LLC** Date
05/01/2019 9:25 AM CDT

_____ _____
Buyer                    Date          Seller                    Date

EXHIBIT 4  Page 1 of 1













4

EXHIBIT 5  Page 3 of 13
Exhibit 1









6

EXHIBIT 5  Page 5 of 13
Exhibit 1





7

EXHIBIT 5  Page 6 of 13
Exhibit 1





EXHIBIT 5  Page 7 of 13
Exhibit 1





9

EXHIBIT 5  Page 8 of 13
Exhibit 1



















This form officially approved by the OKLAHOMA CITY METROPOLITAN ASSOCIATION OF REALTORS(R)

Copyright 2013 Oklahoma City Metropolitan Association of REALTORS ®, Inc
REALTORS® "R" is a registered trademark of the National Association of REALTORS® and its licensees.
Permission to use this form is granted to REALTORS® only.

## EXTENSION OF CONTRACT

05/17/19

Date

WE HEREBY AGREE TO CHANGE THE CLOSING DATE AND POSSESSION ON THE

CONTRACT TO PURCHASE DATED _____ 02/26/19 _____,

THE PROPERTY LOCATED AT ___ 9802 _ N Morgan Road _____

_____ Yukon _____ OK _____ 73099 ___,

AS FOLLOWS:

CLOSING DATE ON OR BEFORE _____ 05/31/19 _____

POSSESSION DATE: _____ At closing and funding _____

ALL OTHER CONDITIONS ON THE CONTRACT SHALL REMAIN THE SAME.

Buyer Jaxon Brody Holdings, LLC. Date          Seller AEM Group LLC          Date

Buyer                          Date          Seller                          Date

This form officially
approved by the
OKLAHOMA
CITY
METROPOLITAN
ASSOCIATION OF
REALTORS(R)

Copyright 2013 Oklahoma City Metropolitan Association of REALTORS ®, Inc
REALTORS® "R" is a registered trademark of the National Association of REALTORS® and its licensees.
Permission to use this form is granted to REALTORS® only.

**EXTENSION OF CONTRACT**

05/17/19
Date

WE HEREBY AGREE TO CHANGE THE CLOSING DATE AND POSSESSION ON THE

CONTRACT TO PURCHASE DATED _____ 02/26/19 _____,

THE PROPERTY LOCATED AT __9802__  N Morgan Road

_____ Yukon _____ OK ____ 73099 __,

AS FOLLOWS:

CLOSING DATE ON OR BEFORE _____ 05/31/19 _____

POSSESSION DATE: _____ At closing and funding _____

ALL OTHER CONDITIONS ON THE CONTRACT SHALL REMAIN THE SAME.

Buyer **Jaxon Brody Holdings, LLC.**  Date

Seller **AEM Group LLC**  Date

Buyer  Date

Seller  Date



# HALL ESTILL
ATTORNEYS AT LAW

Seth A. Day
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
Direct Dial: (405) 553-2869
Facsimile: (405) 553-2855
sday@hallestill.com

May 23, 2019

**FIRST CLASS MAIL**

Chicago Title of Edmond
c/o Alicia Cosby
3520 S. Blvd #100
Edmond, OK 73013

A.E.M. Group, L.L.C.
c/o Dick R. Segress
6100 N. Robinson
Oklahoma City   OK   73118

Re:   Commercial Sale of Real Estate Contract between Jaxon Brody Holdings, LLC
and AEM Group, LLC executed on or around February 25, 2019

Dear Ms. Cosby and Mr. Segress

By way of introduction, our law firm has been retained to represent Jaxon Brody Holdings, LLC ("Buyer") in connection with the above-referenced contract with AEM Group, LLC ("Seller"). This purpose of this correspondence is to provide Seller and the escrow agent with written notification Buyer is terminating the above-referenced contract, and demanding a refund of the earnest money in the amount of $10,000.00.

Pursuant to Section 5 Subsection F, the Buyer has a right to cancel and terminate the contract if the Buyer finds the property is not suitable for its needs. Moreover, Buyer was not allowed uninterrupted access to the property. Additionally, the onsite generator was never tested to be deemed operational. Further, the Seller's representative demanded Buyer's representatives leave the property even though there was a pre-existing agreement with Seller's broker for Buyer to be on the property prior to closing. In any event, Buyer has determined the property is not suitable for its needs and hereby cancels and terminates the contract.

Please remit a refund of the earnest money as soon as practical. If you have any questions, please do not hesitate to call.

EXHIBIT 8  Page 1 of 3

Chicago Title of Edmond
A.E.M. Group, L.L.C.
May 21, 2019
Page 2

Sincerely,

HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.

Seth A. Day

SAD:ccl

cc:     Martha Brennan
        martha@mbresults.com

EXHIBIT 8  Page 2 of 5

Exhibit 1

EXHIBIT F



May 29, 2019

David Ross
Jaxon Brody Holdings, LLC
12312 Hidden Forest Blvd
Oklahoma City, OK 73142

Dear Mr. Ross,

Mr. Segress is in receipt of a letter from Mr. Day. He responded via email to you on May 24th, and to Mr. Hanni on May 29th. I hope that you have had time to read and consider his email. I am writing to clarify some points of the contract in order to ensure that you are fully informed as you make your decisions going forward.

I want to remind you that if there are any disputes that you have with the contract that you are unable to work out with the seller directly, that you agreed to go to mediation. (Page 5, Para. 13)

Additionally, should you choose not to continue and close the property purchase, then "the seller may, at Seller's option, cancel and terminate this Contract and retain all sums paid by the Buyer, but not to exceed 5%of the purchase price as liquidated damages, or pursue any other remedy available at law or in equity, including specific performance." (Page 5, Para.14 B.)

I want to ensure that you are aware of damage done to the property by your staff and/or your contractor(s). Pictures of the associated damage are shown on the following pages of this letter.

As your Realtor in this transaction I want to ensure that you are supported and informed as much as possible. I look forward to discussing this matter with you further and hope that we can come to an a swift and mutually agreeable resolution.

Sincerely yours,

*Martha Brennan*

Martha Brennan, Ph.D.
Senior Commercial Agent
BHGRE Commercial Paramount

3636 E. I-35 Frontage Rd   Edmond, OK 73013   405.348.9700